**POMERANTZ LLP**
Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

***Counsel for Plaintiff***
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY JIMORTHY WONG, Individually and On Behalf of All Others Similarly Situated, | Case No. **'19CV1038 LAB LL** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HERON THERAPEUTICS, INC., BARRY D. QUART, and ROBERT E. HOFFMAN, | |
| Defendants. | |

Plaintiff Jimmy Jimorthy Wong ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference

calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Heron Therapeutics, Inc. ("Heron" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Heron securities between October 31, 2018 and April 30, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Heron was founded in 1983 and is headquartered in San Diego, California. The Company was formerly known as A.P. Pharma, Inc. and changed its name to Heron Therapeutics, Inc. in January 2014.  Heron is a biotechnology company that engages in developing treatments to address unmet medical needs. Heron's product candidates utilize its proprietary Biochronomer drug delivery technology, which delivers therapeutic levels of a range of short-acting pharmacological agents over a period from days to weeks with a single administration.

3.     Heron is developing HTX-011, an investigational, long-acting, and extended-release formulation of the local anesthetic bupivacaine in a fixed-dose combination with the anti-inflammatory meloxicam for post-operative pain management.

4.     On October 31, 2018, Heron announced the submission of its New Drug Application ("NDA") for HTX-011 to the U.S. Food and Drug Administration ("FDA") for postoperative pain management.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Heron had failed to include adequate Chemistry, Manufacturing, and Controls ("CMC") and non-clinical information in its NDA for HTX-011; (ii) the foregoing increased the likelihood that the FDA would not approve Heron's NDA for HTX-011; and (iii) as a result, Heron's public statements were materially false and misleading at all relevant times.

6.     On May 1, 2019, Heron announced receipt of a Complete Response Letter ("CRL") from the FDA on April 30, 2019 regarding Heron's NDA for HTX-011 for the management of postoperative pain (the "May 2019 Press Release").  In the May 2019 Press Release, Heron advised investors that "[t]he CRL stated that the FDA is unable to approve the NDA in its present form based on the need for additional CMC and non-clinical information."

7.      On this news, Heron's stock price fell $3.93 per share, or 18.13%, to close at $17.75 per share on May 1, 2019.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Heron is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PARTIES

13.    Plaintiff, as set forth in the attached Certification, acquired Heron securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.    Defendant Heron is a Delaware corporation with its principal executive offices located at 4242 Campus Point Court, Suite 200, San Diego, CA 92121. Heron's securities trade in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "HRTX."

15.    Defendant Barry D. Quart ("Quart"), Pharm.D., has served as Heron's Chief Executive Officer ("CEO") at all relevant times, and served as Heron's President from February 2019.

16.    Defendant Robert E. Hoffman ("Hoffman") has served as Heron's Chief Financial Officer and Senior Vice President, Finance, at all relevant times.

17.    The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein collectively as the "Individual Defendants."

18.    The Individual Defendants possessed the power and authority to control the contents of Heron's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Heron's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because

of their positions with Heron, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Heron was founded in 1983 and is headquartered in San Diego, California. The Company was formerly known as A.P. Pharma, Inc. and changed its name to Heron Therapeutics, Inc. in January 2014.  Heron is a biotechnology company that engages in developing treatments to address unmet medical needs. Heron's product candidates utilize its proprietary Biochronomer drug delivery technology, which delivers therapeutic levels of a range of short-acting pharmacological agents over a period from days to weeks with a single administration.

20.    Heron is developing HTX-011, an investigational, long-acting, and extended-release formulation of the local anesthetic bupivacaine in a fixed-dose combination with the anti-inflammatory meloxicam for post-operative pain management.

### Materially False and Misleading Statements Issued During the Class Period

21.    The Class Period begins on November 1, 2018.  On October 31, 2018, after-market hours, Heron announced the submission of its NDA for HTX-011 to the FDA for postoperative pain management (the "November 2018 Press Release").  The November

2018 Press Release touted the data Heron used to support HTX-011's NDA filing, which, according to the Company, exhibited the drug's overall efficacy and safety profile, stating, in relevant part:

> HTX-011 was granted both Breakthrough Therapy and Fast Track designations from the FDA. The NDA filing is based on the results of 7 completed clinical studies in 5 bony and soft tissue surgical procedures that included over 1,000 patients who received HTX-011. These completed clinical studies included two Phase 3 studies in which HTX-011 demonstrated superior, sustained postoperative pain relief for 72 hours and decreased the need for opioids, with more patients who were opioid-free compared to placebo and bupivacaine solution, the current standard-of-care. The overall safety profile of HTX-011, administered locally into the surgical site without a needle, is similar to that of the well-established safety profile of bupivacaine solution, without evidence of meloxicam-related toxicities.

22.    The November 2018 Press Release also included a quote from Harold S. Minkowitz, M.D., Associate Professor and Associate Director of Clinical Research at the University of Texas MD Anderson Cancer Center, Department of Anesthesiology and Perioperative Medicine, which stated that "[t]he clinical results with HTX-011 suggest[ed] it may be one of the most promising new non-opioid analgesics for a wide range of surgical procedures."

23.    Finally, the November 2018 Press Release quoted Heron's CEO, Defendant Quart, who touted Heron's prior experience with filing NDAs, as well as the Company's close working relationship with the FDA.  Specifically, Defendant Quart highlighted how the HTX-011 NDA was the third NDA filed by Heron, that the FDA provided "frequent advice . . . during the development of HTX-011[,]" and that the Company would "work[] closely with them during the NDA review process."  Thus, Defendant Quart assured

investors that the HTX-011 NDA was buttressed by Heron's past experience with such filings, as well as "frequent" information and support provided by the FDA.

24.     On February 22, 2019, Heron filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K touted a wealth of information that supported HTX-011's NDA.  For example, the 2018 10-K stated that "HTX-011 has been shown to reduce pain significantly better than placebo or bupivacaine alone in five diverse surgical models: hernia repair, abdominoplasty, bunionectomy, total knee arthroplasty and breast augmentation."  The 2018 10-K also highlighted the structure, execution, and results of each of these studies in detail, touted the FDA's priority review designation for HTX-011's NDA, and failed to mention HTX-011's CMC or non-clinical information, or the fact that such information—or lack thereof—could play an integral role in the FDA's decision whether to approve HTX-011's NDA.

25.     The 2018 10-K disclosed that "[t]he FDA set a PDUFA goal date of April 30, 2019 and indicated that it is not currently planning an advisory committee meeting to discuss this application."

26.     Although Heron's manufacturing processes are wholly dependent upon third parties, the 2018 10-K nevertheless assured investors that these third-party manufacturers were sufficient "to meet the preclinical and clinical requirements of our product candidates[.]"

27.     Appended as Exhibit 32.1 to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "the [2018 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "the information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition of [Heron] at the end of such year and the results of operations of [Heron] for such year."

28.     The statements referenced in ¶¶ 21-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Heron had failed to include adequate CMC and non-clinical information in its NDA for HTX-011; (ii) the foregoing increased the likelihood that the FDA would not approve Heron's NDA for HTX-011; and (iii) as a result, Heron's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

29.     On May 1, 2019, Heron announced receipt of a CRL from the FDA on April 30, 2019 regarding Heron's NDA for HTX-011 for the management of postoperative pain.  According to the May 2019 Press Release, Heron's NDA for HTX-011 had failed to gain FDA approval because it lacked sufficient information.  Specifically, the May 2019 Press Release stated that "the FDA is unable to approve the NDA in its present form based on the need for additional CMC and non-clinical information."

30.    Additionally, the May 2019 Press Release asserted that "[b]ased on the complete review of the NDA, the FDA did not identify any clinical safety or efficacy issues, and there is no requirement for further clinical studies or data analyses."  Thus, according to Heron, the FDA did not find fault with HTX-011 or the need for further clinical studies.  Rather, the FDA had denied the HTX-011's NDA purely based on Heron's failure to include the requisite CMC and non-clinical information in the NDA.

31.    On this news, Heron's stock price fell $3.93 per share, or 18.13%, to close at $17.75 per share on May 1, 2019.

32.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Heron securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Heron securities were actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Heron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Heron;

- whether the Individual Defendants caused Heron to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and

misleading financial statements;

- whether the prices of Heron securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

39.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Heron  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Heron securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

42.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.   During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material

facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Heron securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Heron securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Heron securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Heron's finances and business prospects.

46. By virtue of their positions at Heron, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or

refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Heron, the Individual Defendants had knowledge of the details of Heron's internal affairs.

48. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Heron. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Heron's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Heron securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Heron's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Heron securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for

the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.    During the Class Period, Heron securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Heron securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Heron securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Heron securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period,

upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

52.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, the Individual Defendants participated in the operation and management of Heron, and conducted and participated, directly and indirectly, in the conduct of Heron's business affairs.  Because of their senior positions, they knew the adverse non-public information about Heron's misstatement of income and expenses and false financial statements.

54.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Heron's financial condition and results of operations, and to correct promptly any public statements issued by Heron which had become materially false or misleading.

55.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Heron disseminated in the marketplace during the Class Period concerning Heron's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Heron to engage in the

wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Heron within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Heron securities.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of Heron.  By reason of their senior management positions and/or being directors of Heron, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Heron to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Heron and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Heron.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury.

Dated:  June 3, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone:  (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603

Telephone: 312-377-1181
Facsimile:  312-377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I,  _JIMMY   JIMORTIHY  WONG_                , make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Heron Therapeutics, Inc. ("Heron" or the "Company"), and

authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Heron securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Heron securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Heron

securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ____MAY 07, 2019_____
                        **(Date)**

_____
**(Signature)**

JIMMY JIMORTHY WONG
**(Type or Print Name)**

**Heron Therapeutics  (HRTX)**                                                    **Wong, Jimmy Jimorthy**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 3/8/2019 | Purchase | 800 | $26.2530 |
| 3/20/2019 | Purchase | 1,000 | $24.3420 |
| 3/8/2019 | Sale | 800 | $26.1360 |